**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Z-MODULAR, LLC, | ) | |
| | ) | Case No.: 1:21-cv-02511-RJL |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MCN BUILD, INC. | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.       Z-MODULAR'S CLAIMS ARE TIME BARRED. ............................................. 1

         A.       Z-Modular's Claims Were Brought More Than Three Years After the
                  Limitations Period Began to Accrue. ........................................................ 1

         B.       The U.C.C. Does Not Apply to this Construction Contract ..................... 4

II.      Z-MODULAR'S CANNOT SEEK RECOVERY BECAUSE IT VIOLATED THE
         DISTRICT'S LICENSING LAWS ...................................................................... 7

III.     Z-MODULAR'S BREACH OF CONTRACT CLAIMS FAIL. ..................... 10

         A.       The Subcontracts Do Not Permit Oral Modifications ............................ 10

         B.       Z-Modular's Alleged Oral Modification Lacks Consideration. ............. 14

         C.       Z-Modular Cannot Recover the Full Subcontract Sums ......................... 15

IV.      Z-MODULAR'S QUANTUM MERUIT CLAIMS FAIL. ............................... 17

CONCLUSION .............................................................................................................. 21

CERTIFICATE OF SERVICE ....................................................................................... 22

**INTRODUCTION**

This case concerns Plaintiff Z-Modular's attempt to turn its incomplete and failed performance under the parties' Subcontracts into a windfall.  It is undisputed that, because Z-Modular failed to deliver on its promises, Defendant MCN was forced to find others to do Z-Modular's job and perform the vast majority of Z-Modular's work.  Yet, Z-Modular claims here that—even though it did not perform the agreed-upon work—Z-Modular is owed an amount functionally identical to the amount it would have been paid had it fully and properly performed.

In response, Z-Modular does not even attempt to explain how its position makes any practical or economic sense.  Instead, it manufactures a host of supposed factual disputes to try to evade summary judgment on its fundamentally implausible claims.  But there can be no genuine dispute as to the core dispositive facts:

- Z-Modular knew that its invoices were due and unpaid, and thus its claims accrued, more than three-years prior to the expiration of the limitations period that applies here;

- Z-Modular did not have the licenses required in DC to do the work it contracted to do, rendering the Subcontracts void and unenforceable;

- There was no written modification to the Subcontracts and no consideration for any alleged oral modification, barring Z-Modular's breach of contract claims; and

- There is an express contract between the parties and Z-Modular can forecast no evidence of the reasonable value of its services, barring Z-Modular's equitable claims.

Thus, for the reasons provided in MCN's opening brief and for the additional reasons that follow, MCN is entitled to summary judgment on all Z-Modular's claims.

**ARGUMENT**

**I.    Z-MODULAR'S CLAIMS ARE TIME BARRED.**

    **A.    Z-Modular's Claims Were Brought More Than Three Years After the Limitations Period Began to Accrue.**

Z-Modular's breach of contract claims are time barred because they were filed more than three years after its invoices to MCN were due and Z-Modular's claims began to accrue.  MCN

Mot. (ECF 33-1) at 14–16.  Z-Modular sent invoices to MCN on July 9, 2018, as Z-Modular itself alleges in the complaint.  *Id.* at 10.  Z-Modular, however, did not receive any payment from MCN as expected in connection with the July 20 draw, or during the ensuing months.  In numerous internal emails from July through September 2018, Z-Modular employees remarked that the invoices were past due.  *Id.* at 10–11.  For example, Z-Modular's accountant wrote that Z-Modular will "need to reserve against the open AR for uncollectability due to how long the invoices have been open."  *Id.* at 11.  And Z-Modular's President said that "[o]ur invoice has been due since July with not one payment from [MCN]."  *Id.*  Accordingly, no genuine dispute exists that Z-Modular's July 9 invoices were past due on September 27, 2018, three years before this case commenced.

Rather than dispute when such invoices were due and owing, Z-Modular instead argues in opposition that its claims were timely under the three-year limitations period because "MCN had not refused to pay Z-Modular's invoices" and instead the "parties anticipated a negotiation" over payment.  Z-Modular Opp. (ECF 35) at 8.  Z-Modular then recounts various correspondence exchanged with MCN in September and October 2018, during which the parties discussed the disputed invoices.

Such negotiations are irrelevant here.  The statute of limitations for a breach of contract claim begins to accrue when invoices are due and owing, regardless of a party's dispute over an invoice or its affirmative refusal to pay.  *See Cunningham & Assocs. v. Dugan*, 909 A.2d 1001, 1002 & n.2 (1996) (stating that the statute of limitations begin to run when fees for service were "due and payable").  For example, in *Lu v. Lezell*, 45 F. Supp. 3d 86 (D.D.C. 2014), the court entered summary judgment on plaintiff's contract claim because it was filed more than three years after the date that plaintiff was supposed to be paid in full.   *Id.* at 94.  This clear accrual rule reflects the well-settled principle that the limitations period begins to run as soon as there is a breach, which occurs when a party has failed to pay its debts.  *See Medhin v. Hailu*, 26 A.3d 307,

310 (D.C. 2011).  Whether the parties negotiate over the validity or terms of that debt does not erase the alleged breach or somehow toll the limitations period.  *See Barot v. Embassy of Republic of Zambia*, 264 F. Supp. 3d 280, 290 (D.D.C. 2017) (refusing to toll limitations period absent concrete evidence that clearly establishes an affirmative inducement to delay filing).

By contrast, in some causes of action other than breach of contract, a claim may accrue upon a party's "refusal to pay."  For example, as Z-Modular itself acknowledges, a quantum meruit claim accrues "when the enrichment becomes unjust, which is the point at which services have been rendered ***and payment is refused***."  Z-Modular Opp. (ECF 35) at 10 (emphasis in original).  As the D.C. Court of Appeals has explained, this is because, unlike breach of contract, "the essence of a *quantum meruit* claim is not the plaintiff's expectancy of payment, but the unjust enrichment of the defendant," such that the limitations period accrues "when payment is refused."  *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1223 (D.C. 2005) (internal quotations omitted).  The essence of breach of contract, on the other hand, ***is*** that expectancy of payment, which is why the contract claims here accrued when Z-Modular's invoices went unpaid.

Moreover, this distinction between the accrual of quantum meruit and breach of contract does not save Z-Modular's quantum meruit claims.  MCN Mot. (ECF 33-1) at 19–20.  As Z-Modular's own internal emails show, MCN had refused to pay Z-Modular's demand—its full costs without any reductions for the incomplete scope of work—well before September 27, 2018.  Z-Modular's opposition quotes at length an August 28, 2018 email between MCN and Z-Modular executives.  *See* Z-Modular Opp. (ECF 35) at 8–9.  Yet the opposition omits MCN's clear statement in that same email that Z-Modular "cannot bill for the whole scope of work when effectively you did less than 40%."  Z-Modular Ex. 1 (ECF 35-4) at 3.  MCN had unequivocally refused payment as invoiced, and Z-Modular's supposed intent to submit a revised invoice after further negotiations did not stop the statute of limitations from accruing.  *See Cunningham*, 909

3

A.2d at 1002 n.3 (stating that a statute of limitations cannot be extended "by a plaintiff making a new demand for payment when initial demands for payment have been unsuccessful").

In short, based on undisputed facts, including Z-Modular's own cited emails, Z-Modular's claims are time barred. The breach of contract claims were filed more than three years after payment was due on Z-Modular's invoices, and the quantum meruit claims were filed more than three years after MCN refused to pay those invoices. MCN, therefore, is entitled to summary judgment in its favor on all of Z-Modular's claims.

### B.    The U.C.C. Does Not Apply to this Construction Contract.

As MCN has already explained, Z-Modular cannot save its claims by invoking the four-year limitations period under the U.C.C. because this contract is not a transaction for goods. MCN Mot. (ECF 31-1) at 16–19. Z-Modular's core argument that the U.C.C. applies is premised on an unsupported and generic statement that these contracts were for "modular" units. Z-Modular Opp. (ECF 35) at 7. Labels aside, the "modular" construction method here is nothing like the "modular units" in the cases Z-Modular cites. For example, in *Ritz-Craft Corp. v. Stanford Management Group*, 800 F. Supp. 1312 (D. Md. 1992), the contract concerned an off-the-shelf, preexisting individual modular home that was lowered onto a foundation. *Id.* at 13–17. Other cited authorities similarly refer to the contracts as one for "prefabricated modular units," meaning off-the-shelf products that are simply transported to the site. *See Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 20 (7th Cir.1979).

Here, by contrast, the contract involved a full-fledged construction project using modular construction techniques for part of the total project. MCN Mot. (ECF 33-1) at 17–18. As opposed to a single, prefabricated unit, the contract entailed the design, engineering, and construction of individual components using modular construction techniques. *Id.* The components then would be separately transported to the site, go through further construction processes, and be connected

to each other at the larger building structure on site.  *Id.*  Z-Modular was responsible not only for designing, engineering, and constructing these units, but also connecting them together and providing a full suite of plumbing, mechanical, and electrical services.  *Id.*[1]

Indeed, the Subcontracts' own language reveals that they are for services rather than goods. Z-Modular, for example, contends that MCN places "'form' over substance" by emphasizing the parties' use of standard AIA construction contract forms for the provisions of design, engineering, and construction services, as opposed to a purchase order.  Z-Modular Opp. (ECF 35) at 5.  But, under D.C. law, use of a particular type of form is a relevant consideration.  MCN Mot. (ECF 33-1) at 18 (*citing B&B Refrigeration & Air Cond. Ser., Inc. v. Haiflay*, 1978 WL 23510, at *25 (D.C. Super. Nov. 6, 1978)).  To that, Z-Modular offers no meaningful response.

Regardless, that the parties intended the Subcontracts to be for services is demonstrated in multiple other ways.  The parties describe themselves as "contractor" and "subcontractor," ***not*** "buyer" and "seller."  MCN Ex. 1 (ECF 33-4) at 1.  The Subcontracts are described as a "Design-Build Project," ***not*** a purchase or sales order.  *Id.*  And, consistent with that description, the Subcontracts expressly provide that Z-Modular's scope of work was construction services: to "[p]rovide all labor and materials necessary to furnish . . . permanent modular construction." *Id.* at 10 (Article 8); *see also White v. Peabody Const. Co.*, 386 Mass. 121, 131 (1982) (holding that U.C.C. did not apply where the "[t]he contract . . . called for 'the erection of buildings'").  The Subcontracts' payment structure provided for various progress payments based on "completion of fabrication" and then "installation" of the units, ***not*** the sale of a product.  MCN Ex. 1 (ECF 33-4)

---

[1] MCN, of course, pointed all this out in its original brief.  Yet, Z-Modular makes the perplexing assertion that MCN "admits in its brief" that that Subcontracts are for "prefabricated housing units."  Z-Modular Opp. (ECF 35) at 4.  To be clear, the Subcontracts are ***not*** contracts for the purchase of prefabricated housing units—they are agreements for Z-Modular to custom engineer and design modules that Z-Modular would then construct and install on-site.

at 11 (Article 11).  And, while Z-Modular claims that "payments were tied to fabrication, ***delivery***, and installation of the modular units" (Z-Modular Opp. (ECF 35) at 6 (emphasis added)), the payment terms make no mention whatsoever of "delivery."  They are based solely on "fabrication" and "installation," both of which are services.  *See* Black's Law Dictionary (11th ed. 2019) ("fabricate" means "[t]o frame, construct, or build").

Under Z-Modular's view, on the other hand, virtually every construction contract could be classified as a transaction in goods under the U.C.C.  That is, a party to every construction contract could argue, as Z-Modular does here, that the "ultimate purposes was to procure . . . housing units," and that "the design, engineering, and other services that were utilized to create those units would be of no use . . . without the finished goods."  Z-Modular Opp. (ECF 35) at 4.  That is not, however, how courts view construction contracts.  *See White*, 386 Mass. at 131 (holding that U.C.C. did not apply where "the contract . . . was for the sale of a completed building").

Nor were the design, engineering, plumbing, electrical, HVAC, and other myriad technical services that Z-Modular agreed to provide merely incidental to the Subcontracts, as Z-Modular claims in its brief.  Z-Modular Opp. (ECF 35) at 3–4.  Substantial portions of Z-Modular's scope of work concerned these services.  MCN Ex. 1 (ECF 33-4) at 18–23 (listing Z-Modular's scope of work).

Finally, the Subcontracts did not concern items which were "movable at the time of identification to the contract for sale."  MCN Mot. (ECF 33-1) at 19; *see also* D.C. Code § 28:2-105 Cmt. 1 (providing that "goods" does not extend to "things which are not fairly identifiable as movables before the contract is performed").  Rather than list movable items, the Subcontracts described Z-Modular's obligations and scope of work as providing design, engineering, fabrication, and installation services.  Nevertheless, Z-Modular attempts to analogize this contract to one for specially manufactured goods.  But these Subcontracts are not, as Z-Modular would

have it, akin to an agreement to purchase an individual prefabricated home, a water tank, or a dock leveler.   Z-Modular Opp. (ECF 35) at 6–7.   Instead, they concern the full-blown construction of custom 4- and 6-story residential buildings, which contained numerous rooms to be fully fitted by Z-Modular with plumbing, HVAC, and electrical using modular construction techniques.   MCN Mot. (ECF 33-1) at 4.   The Subcontracts, therefore, are not governed by the U.C.C., and are thus not subject to the 4-year limitations period.   Z-Modular commenced its action out of time.

## II.    Z-MODULAR'S CANNOT SEEK RECOVERY BECAUSE IT VIOLATED THE DISTRICT'S LICENSING LAWS.

D.C. law is well-settled and unequivocal:   any contracts made in violation of the District's licensing statutes and regulations are ***void and unenforceable without exception***.   *See HVAC Specialist, Inc. v. Dominion Mech. Contractors, Inc.*, 201 A.3d 1205, 1210 (D.C. 2019).   As a result, the party violating the statute cannot recover on a contract or quasi-contractual basis.   *Id.*[2]

Following D.C. licensing requirements, the Subcontracts here expressly provided that Z-Modular "shall be lawfully licensed."   MCN Ex. 1 (ECF 33-4) at § 4.2.   And Z-Modular does not dispute that it lacked the necessary licenses.   Z-Modular Resp. to SOF (ECF 35-1) at ¶ 22.   That ends the inquiry.

Z-Modular, however, argues that it should be excused from D.C.'s requirements because it intended to engage sub-subcontractors who supposedly would be licensed.   Z-Modular Opp. (ECF 35) at 10–11.   But that is not what Z-Modular agreed to.   Under the Subcontracts, Z-Modular—and ***only*** Z-Modular—was listed in the Subcontract's scope of work as the party that

---

[2] *See also Sturdza v. United Arab Emirates*, 11 A.3d 251, 257–58 (D.C. 2011) (barring recovery where the architect lacked a license "when he or she began negotiating the contract" or when he "entered into the contract"). *Saul v. Rowan Heating & Air Conditioning, Inc.*, 623 A. 2d 619, 621 (D.C. 1993) ("This jurisdiction has held consistently that a contract entered in violation of a licensing statute . . . is void and unenforceable."); *Cevern, Inc. v. Ferbish*, 666 A.2d 17, 22 (D.C. 1995) ("[T]he court has been insistent that . . . recovery for performance in return for a promise unenforceable on public policy grounds is forbidden.").

would be responsible for the licensed work.  MCN Ex. 1 (ECF 33-4) at 18–23.  Z-Modular was the sole party with whom MCN contracted, the sole party that would be entitled to payment from MCN for such work, and the sole party that could be held accountable by MCN if such work did not adhere to specifications or code.

In essence, Z-Modular seeks an exception to the licensing rules, under which an unlicensed subcontractor could evade D.C.'s licensing rules by later claiming it "intended" to hire licensed sub-subcontractors.  Time after time, however, D.C. courts have rejected attempts to create exceptions to D.C.'s licensing rules.  *See* MCN Mot. (ECF 33-1) at 21–23 (collecting authorities). In *Cevern,* for example, the D.C. Court of Appeals precluded a contractor from recovering for work performed even after it obtained a license, noting "the potential mischief of an exception that would let a contractor attempt to prove that the bulk (or a substantial portion) of the work was done on one side of the line rather than the other."  666 A.2d at 23.

Z-Modular's proposed exception would invite similar "potential mischief" by allowing any unlicensed subcontractor to claim that the portion of its work requiring a license would be performed by some unidentified sub-subcontractor in the future.  Z-Modular's proposed exception also creates practical problems, because it turns on the contractor's oral assurance that, despite having executed the contract, the contractor actually intended to engage unidentified licensed subcontractors in the future.

Given that D.C. law is well settled that no exceptions exist to the licensing laws, Z-Modular retreats to cases from nearly 50 years ago interpreting the laws of other states.  Z-Modular Opp. (ECF 35) at 11–12.  Each of these other jurisdictions, however, allows a so-called "substantial compliance" exception to their licensing requirements.  *See Spry v. Miller*, 25 Wash. App. 741, 744 (1980) ("[P]laintiff was exempt because . . . substantially complied with the . . . licensing requirements . . . ."); *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F. 2d 486, 489 (9th Cir.

1976) ("[T]he arrangement . . . substantially complied with the Nevada licensing scheme . . . ."); *Northwest Cascade Construction, Inc. v. Custom Component Structures, Inc.*, 83 Wash 2d 453 (1974) ("This court recognizes the rule that proof of 'substantial compliance' with the registration requirements of the act is sufficient . . . ."). But the District of Columbia recognizes no exceptions, for "substantial compliance" or otherwise. *See HVAC Specialist, Inc. v. Dominion Mech. Contractors, Inc.*, 201 A.3d 1205, 1210 (D.C. 2019) (holding that "potential unfair applications of the rule at the margins have not persuaded us to sacrifice the benefits of a clear-cut, unmistakable requirement").

For this reason, were the Court to seek guidance from other states, a more apt comparison is with *Topro Services, Inc. v. McCarthy Western Constructors, Inc.*, 856 F. Supp. 1461 (D. Colo. 1994), as described in MCN's opening brief. MCN Mot. (ECF 31-1) at 23–24. Like D.C., Colorado's licensing regime recognizes no exceptions, such as "substantial compliance." *Topro*, 856 F. Supp. at 1465. And, like here, the *Topro* court entered summary judgment against an unlicensed subcontractor seeking to recover for work performed by licensed subcontractors, finding it insufficient "that someone who was licensed did the actual work" because there are "no loopholes to compliance with the licensing scheme." *Id.* Notably, Z-Modular does not address this case.

Even if D.C. law **did** recognize an exception, no evidence exists in support of Z-Modular's contention that "the parties understood that Z-Modular would hire licensed contractors." Z-Modular Opp. (ECF 35) at 12. Z-Modular did not enter into a single contract with a licensed subcontractor to perform the required electrical, mechanical, HVAC, or plumbing work. Z-Modular Resp. to SOF (ECF 35-1) at ¶ 23. Further, Z-Modular had not taken any steps to "substantially comply" even six months after executing the Subcontracts, when MCN was forced to complete portions of Z-Modular's scope of work. Z-Modular also contends that it intended to

"coordinate" performance of the work, but Z-Modular was not licensed as a general contractor either. *Id.* at ¶ 22.

The sole evidence Z-Modular musters are various provisions in the Subcontracts that make generic references to "sub-subcontractors." Z-Modular Opp. (ECF 35) at 10. Those provisions do not provide that Z-Modular would engage sub-subcontractors to perform the scope of work that required a license—they do not even mention a license or the portion of work that requires a license.

In any event, Z-Modular's purported intentions are irrelevant here. It is undisputed and dispositive that Z-Modular was not licensed to perform the scope of work assigned to Z-Modular in the Subcontracts, and thus Z-Modular cannot now seek recovery under established D.C. law.

## III.    Z-MODULAR'S BREACH OF CONTRACT CLAIMS FAIL.

Z-Modular's contract claims fail for two independent reasons. First, Z-Modular's claims arise from an alleged oral modification, yet the Subcontracts contain no-oral modification provisions. MCN Mot. (ECF 31-1) at 25–28  Second, the alleged modification lacks any consideration because Z-Modular seeks effectively the same compensation for a substantially reduced amount of work. *Id.* at 28–30. Z-Modular's arguments in response are unpersuasive.

### A.    The Subcontracts Do Not Permit Oral Modifications.

Z-Modular admits that its entire case is premised on MCN's alleged oral promise to make Z-Modular "whole" for the limited work that Z-Modular did perform under the Subcontracts. *See* Z-Modular Mot. (ECF 29-2) at 8–9 (stating that "[i]n this lawsuit, Z-Modular seeks to recover the expenses it incurred . . . pursuant to an agreement whereby MCN promise to make Z-Modular whole"). Z-Modular further admits that this alleged oral promise was not reduced to a written amendment or modification. *See* Z-Modular Resp. to SOF (ECF 35-1) at ¶¶ 18, 53–54. These admissions are fatal to Z-Modular's contract claims because Section 1.4 of the Subcontracts

requires that any modifications and amendments must be made in writing.   MCN Ex. 1 (ECF 33-4) at 3.

In response, Z-Modular attempts to invoke Section 5.2 of the Subcontracts, which permits MCN to make changes to Z-Modular's scope of work.  Z-Modular Opp. (ECF 35) at 13–14.  It is not clear, however, how that provision advances Z-Modular's argument that the Subcontracts allow oral modifications.  On the contrary, by its own express terms, Section 5.2 requires *multiple* writings to change the scope of work and compensation terms.   First, it provides that "[t]he Subcontractor may be ordered *in writing by the Contractor* . . . to make changes in the Work . . . consisting of additional, deletions, or other revisions . . . with the Subcontract Sum . . . being adjusted accordingly."   MCN Ex. 1 (ECF 33-4) at 8 (emphasis added).   That provision then requires that "[t]he Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor *written copies of a claim for adjustment* to the Subcontract Sum and Subcontract Time for such revised Work."  *Id.*

Here, it is undisputed that the requirements for a writing were not met, particularly with respect to the compensation terms that are now in dispute.  Again, Z-Modular acknowledges that MCN did not reduce to writing the supposed oral promise to make it "whole" or provide any other writing that made adjustments to the terms of Z-Modular's compensation.  Z-Modular Resp. to SOF (ECF 35-1) at ¶ 18.  Nor did Z-Modular, prior to commencing the alleged revised scope of work, submit (much less submit "promptly") a written claim for adjustment to the compensation terms.  Z-Modular relegates this issue to a footnote, conceding that it "did not submit a written claim for adjustment."  Z-Modular Opp. (ECF 35) at 14 & n.2.

Z-Modular instead contends that "MCN waived compliance with this provision."  *Id.*  This argument is unavailing.  D.C. law requires waivers to be clear, unequivocal, unambiguous, and decisive such that no other reasonable explanation is possible. *See Lacek v. Wash. Hosp. Ctr.*

*Corp.*, 978 A.2d 1194, 1201 (D.C. 2009); *Kersey v. Washington Metro. Area Transit Auth.*, 586 F.3d 13, 18 (D.C. Cir. 2009).  For that reason, D.C. courts typically do not circumvent a no-oral-modification clause via waiver.  *See, e.g.*, *Marlowe v. Argentine Naval Comm'n*, 808 F.2d 120, 123 (D.C. Cir. 1986).

Z-Modular does not address the cited D.C. authorities, once again reverting to out-of-state case law as support.  Z-Modular Opp. (ECF 35) at 14 (citing federal courts in Massachusetts and New Jersey). Yet even those cases undermine the application of waiver here.  For example, in *ePresence, Inc. v. Evolve Software, Inc.*, 190 F. Supp. 2d 159 (D. Mass. 2002), the court **dismissed** a claim based on an alleged oral modification to the contract noting the absence of "clear factual evidence" of waiver.  *Id.* at 164.  The court reached a similar result in the other case Z-Modular cites, finding that the nonmovant failed to show sufficient "course-of-performance/conduct evidence indicating a waiver." *Green Const. Co. v. First Indem. of Am. Ins. Co.*, 735 F. Supp. 1254, 1262 (D.N.J. 1990).

Here, Z-Modular similarly has failed to show a genuine dispute that MCN waived the prohibition on oral modifications, and instead agreed to pay Z-Modular whatever costs it incurred.  The supposedly "ample evidence" that Z-Modular cites in its opposition makes no mention at all of any changes to Z-Modular's compensation terms.  *See* Z-Modular Opp. (ECF 35) at 15 (citing Dkt. No. 29-9, Dep. Ex. 62).  Indeed, Z-Modular's **only** evidence with respect to compensation is its own self-serving interpretation of some alleged oral promise that MCN would "make Z-Modular whole." *See* Z-Modular Resp. to SOF (ECF 35-1) at ¶¶ 18, 53–54.  Such an oral statement about being "made whole" is far from clear and unambiguous.  MCN Mot. (ECF 31-1) at 26–27.  Even Z-Modular's own authority agrees.  *See Green Const. Co.*, 735 F. Supp. at 1262 (D.N.J. 1990) (stating that a statement "indicating a changed agreement—the change being made orally—would not be enough under the law" to show waiver).

Still more, Z-Modular's course of performance undermines its contention that MCN agreed to a blanket reimbursement of all of Z-Modular's costs.  Z-Modular's Vice President directed Z-Modular's accountant to submit invoices in accordance with the original milestone payment provisions in the Subcontracts.  MCN Mot. (ECF 33-1) at 27.  While Z-Modular's brief now characterizes those invoices as a mere "placeholder" (Z-Modular Opp. (ECF 35) at 15), they were transmitted to MCN without any such qualification and in anticipation of MCN's July 20 draw (MCN Mot. (ECF 31-1) at 27.  Z-Modular's accountant complained multiple times that those invoices' were outstanding.  Z-Modular Opp. (ECF 33-1) at 10–11.  Z-Modular own complaint says that "[o]n or about July 9, 2018, Z-Modular billed MCN . . . for amounts due."  Compl. (ECF 1) at ¶ 23.

Faced with all this, Z-Modular attempts once again to raise inapplicable law involving the the U.C.C.  Z-Modular Opp. (ECF 35) at 14.  As already explained, the U.C.C. does not apply to these contracts.  But it does not matter, because even the U.C.C. enforces no-oral-modification provisions.  *See* D.C. Code § 28:2-209(2).  And, even under the U.C.C., any alleged waiver must be clear and unambiguous.  *See, e.g.*, *Marlowe v. Argentine Naval Comm'n*, 808 F.2d 120, 123 (D.C. Cir. 1986).

Ultimately, Z-Modular's position makes no sense.  No reasonable commercial party would agree to pay another the same price for performing only a fraction of the work originally promised.  Z-Modular does not even attempt to explain why it is entitled to such a windfall here, other than to repeat its self-serving interpretation of a vague, ambiguous, and unenforceable alleged oral promise.

Because Z-Modular cannot show unequivocal conduct evidencing MCN's waiver and oral agreement to adjust the Subcontract's compensation terms and because all such adjustments must

be in writing under the Subcontracts, Z-Modular's contract claims based on an alleged oral agreement fail.

### B.    Z-Modular's Alleged Oral Modification Lacks Consideration.

Z-Modular's alleged oral modification also fails because it lacks consideration.  The law is well settled that no contract can exist without independent consideration: "A contract without consideration is like water without oxygen: an impossibility."  *Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*, 531 F. Supp. 3d 153, 176 (D.D.C. 2021).

Z-Modular claims that "MCN did receive consideration; it received the modular units corresponding to the revised scope."  Z-Modular Opp. (ECF 35) at 16.   This makes little sense. Z-Modular must show that MCN received consideration for the Subcontracts' alleged modification.  *See Steele v. Isikoff*, 130 F. Supp. 2d 23, 33 (D.D.C. 2000) (dismissing breach of contract claim because second contract was to perform a "preexisting duty" and thus "lack[ed] any independent, valid consideration" from the first contract).  MCN was ***already*** entitled to the units (and more) under the original Subcontracts.   Indeed, Z-Modular's Vice President himself confirmed the lack of consideration, stating in an email that Z-Modular seeks "the original contract value amount and [] no price reduction that correlates to the scope reduction."  MCN SOF (ECF 33-2) at ¶ 52.

Z-Modular also contends no consideration was required because Section 5.2 of the Subcontracts permits revisions.  As already explained, however, Section 5.2 is inapplicable because the parties did not execute a writing reflecting the alleged change to the compensation terms, and because Z-Modular did not submit a written claim for adjustment.  In any event, Section 5.2 provides for revisions to the scope of work, "with the Subcontract Sum . . . being adjusted accordingly."  MCN Ex. 1 (ECF 33-4) at § 5.2  Here, Z-Modular seeks to be compensated at

functionally the same price as the original Subcontracts, such that there were no adjustments to the Subcontract Sum.

Thus, Z-Modular cannot identify any benefit that MCN received by virtue of the alleged oral agreement beyond what was already promised under the original agreements.  While Z-Modular claims that MCN supposedly was willing to accept a lesser scope of work, it offers no evidence or logical explanation why MCN would agree to such changes without any reduction in price or offset for MCN's increased scope of work.  Its breach of contract claims, therefore, fail for lack of consideration.

**C.      Z-Modular Cannot Recover the Full Subcontract Sums.**

In the alternative, Z-Modular claims—for the very first time in this litigation—that it should be permitted to recover the original Subcontract Sums if its alleged oral agreement is unenforceable.  This alternative argument, however, is a complete departure from the damages claims Z-Modular has asserted to date.   In the complaint, Z-Modular alleges that the MCN agreed to "cover any costs incurred by Z-Modular in expediting and finishing its scope."  Compl. (ECF 1)   at ¶ 18.   The complaint then demands a specific damages amount ($6,535,111.47) that supposedly reflects MCN's incurred costs.  *Id.* at ¶¶ 51, 56.

Z-Modular's damages theory, as pleaded, is then echoed throughout the litigation, without deviation.  For example, in its Rule 26(a)(1) disclosures, Z-Modular seeks as damages "the labor, materials and services Z-Modular provided" in connection with the Subcontracts rather than the Subcontract amounts.  Ex. 1 at 9.  And, at the outset of its own cross-motion for summary judgment, Z-Modular stated unequivocally: "In this lawsuit, Z-Modular seeks to recover the expenses it incurred in performing work on Ward 7 and Ward 8 pursuant to an agreement whereby MCN promised to make Z-Modular whole (*i.e.*, compensate Z-Modular for its expenses)."  Z-Modular Mot. (ECF 29-2) at 1–2.

"It is axiomatic . . . that a party may not amend his complaint through an opposition brief." *Sai v. Transportation Sec. Admin*., 326 F.R.D. 31, 33 (D.D.C. 2018) (collecting case). This includes a brief in opposition to summary judgment. *See Wright v. U.S. Dep't of Justice*, 121 F. Supp. 3d 171, 183 n.7 (D.D.C. 2015). Here, however, the opposition brief was the first time Z-Modular ever claimed that it was somehow entitled to the original Subcontract Sums. Having advanced a claim for its costs predicated solely on an alleged oral modification to the contract, Z-Modular cannot advance for the first time in opposition to summary judgment that it is entitled to the Subcontract Sums under the original Subcontracts.

In any event, Z-Modular's unpleaded damages theory fails on the merits. Each Subcontract expressly provided that MCN's payment obligations to Z-Modular were based upon Z-Modular achieving certain specific performance milestones. MCN Ex. 1 (ECF 33-4) at § 11.2. After the initial installment payment of 15% of the Subcontract sums, which MCN paid, Z-Modular was entitled to reimbursement at various points after completing fabrication and installation of the modular units. *Id.* Here, there exists no genuine dispute that Z-Modular failed to achieve any of these milestones. MCN Mot. (ECF 33-1) at 8–9. It is uncontested that dozens of services provided in Z-Modular's scope of work were never provided, such that Z-Modular only performed approximately a fraction of the agreed-upon work. *Id.* Thus, nothing in the Subcontracts entitles Z-Modular to full payment for partial performance.

As support for this theory, Z-Modular relies on U.C.C. authorities discussing the measurement of a seller's damages for delivered goods. Z-Modular Opp. (ECF No. 35) at 18. Once again, this is not a U.C.C. case. Regardless, Z-Modular omits that, in the sole D.C. case on which it relies, the D.C. Court of Appeals made clear that "[m]odern contract law permits a seller to sue for the full contract price ***when the seller has fully performed***." *Fateh v. Rich*, 481 A.2d 464, 471 (D.C. 1984). In *Fateh*, the court described that case as one "where the seller has

performed all his obligations under the contract and all that remains is for the buyer to render payment." *Id.*

Here, by contrast, Z-Modular failed to perform the work required to earn the installment payments, such that MCN was forced to exercise its rights under Section 3.5 of the Subcontracts and expend millions of dollars to correct Z-Modular's defaults by supplementing the work. MCN Mot. (ECF 33-1) at 29–30. Z-Modular did not even complete performance of its supposed reduced scope with respect to roughly eighty percent of the modules. *Id.* at 8–9. The fact that MCN still used Z-Modular's incomplete portion of the work does not then permit Z-Modular to recover the full Subcontract Sums under the contract, as it now claims in the alternative. Z-Modular attempts to analogize this case to a buyer's acceptance of nonconforming widgets under the U.C.C. Z-Modular Opp. (ECF 35) at 18. Yet this case consists of a wholesale failure by Z-Modular to achieve any of the performance milestones under the Subcontracts that would support payment of the original contract price.

For all of these reasons, summary judgment should be granted in MCN's favor on Z-Modular's contract claims (Counts I and II).

## IV.    Z-MODULAR'S QUANTUM MERUIT CLAIMS FAIL.

Z-Modular's claims for quantum meruit also fail for two independent reasons. First, under established D.C. law, Z-Modular cannot pursue a claim for quantum meruit when, as here, there is an express contract between the parties. MCN Mot. (ECF 33-1) at 30–32. Second, Z-Modular cannot forecast, as it must, objective evidence establishing the reasonable value of whatever labor, materials, and services Z-Modular provided. *Id.* at 32–35.

On the first point, MCN has explained that "in order to claim a remedy for unjust enrichment, there must be no contract, either express or implied." *Id.* at 31 (quoting *Intelect Corp. v. Celleo P'ship GP*, 160 F. Supp. 3d 157, 190–91 (D.D.C. 2016)); *see also Schiff v. Am. Ass'n of*

*Retired Pers.*, 697 A.2d 1193, 1194 (D.C. 1997) ("[T]here can be no claim for unjust enrichment when an express contract exists between the parties.").  Z-Modular does not dispute that there are express Subcontracts between the parties, that those agreements are valid, or that the contracts cover the issues at dispute here.  Nor could it, as Z-Modular has brought parallel claims alleging breach of those very agreements.[3]

Instead, Z-Modular argues in response that its claims should be allowed to proceed under an exception to the general rule that allows a party to plead breach of contract and quantum meruit claims in the alternative.  Z-Modular Opp. (ECF 35) at 20.  But—as Z-Modular concedes (*id.* at 20–21)—Z-Modular did not, in fact, plead the claims in the alternative.  *See* Compl. (ECF 1) at ¶¶ 59–62, 64–67.  Regardless, as MCN has explained, D.C. law provides that alternative pleading is not an option where, as here, the parties do not dispute the existence of a valid and express contract.  MCN Mot. (ECF 33-1) at 32.

Z-Modular cites no authority to the contrary.  For example, in *Computer Reserves, Inc. v. Computer Network Corp.*, No. CIV.A 86-1201, 1988 WL 15178 (D.D.C. Feb. 17, 1988), the court allowed an unjust enrichment claim to proceed ***because*** the plaintiff disputed the existence of a valid contract as to a key term of the parties' dispute.  *Id.* at *7 (stating that "plaintiff's argument is that ***even though no agreement was reached on this aspect of its dealing with defendant***, it

---

[3] To be sure, the alleged oral ***modification*** to the Subcontracts is unenforceable, for reasons explained above.  *See supra* at Sec. III.A–B.  Nonetheless, Z-Modular's quantum meruit claims still fail because they are premised on the existence and validity of the underlying Subcontracts (otherwise there would be nothing to modify).  And Z-Modular does not advance—much less provide authority supporting—the notion that a party can be liable in quantum meruit based on an unenforceable oral modification to an otherwise valid agreement. Although Z-Modular's failure to comply with the D.C.'s licensing rules does render the underlying Subcontracts void and unenforceable, such failure bars both its breach of contract ***and*** equitable quasi-contract claims. *See supra* at Sec. II.  Thus, if the Court grants summary judgment in MCN's favor on that basis (which it should), the Court need not reach the additional reasons to grant summary judgment on Z-Modular's quantum meruit claims.

should be paid to avoid the unjust enrichment of defendant" (emphasis added)).  As the court explained, "[q]uantum meruit, or quasi-contract, is available when there is no specific, express contract, either because there was no agreement or because the agreement fails (*e.g.,* because the agreement is illegal) or is avoided (*e.g.,* because of mistake or incapacity)."  *Id.* at *6.  According to Z-Modular itself, none of those things apply here.

Z-Modular also argues that "quantum meruit is available notwithstanding the existence of an express written contract."  Z-Modular Opp. (ECF 35) at 20.  Z-Modular, however, does not address the ample case law contradicting that very proposition.  *See* MCN Mot. (ECF 31-1) at 31.  And the cases that Z-Modular does cite are inapposite.  Z-Modular Opp. (ECF 35) at 20.  Those cases concern whether, in certain circumstances, the **remedy** of quantum meruit (meaning, in that context, restitution for the value of the non-breaching parties' performance) might be available in lieu of damages for a breach of contract claim.  *Id.* (citing *United States for use and benefit of American Civil Construction, LLC v. Hirani Engineering & Land Surveying, P.C.*, 263 F. Supp. 3d 99, 114–15 (D.D.C. 2017); *Lee v. Foote*, 481 A.2d 484, 485 (D.C. 1984) (per curiam)).  The cases, therefore, say nothing about whether equitable **quasi-contract claims** like Z-Modular's claims here are barred by the existence of an express contract.  Under D.C. law, such claims are barred, and MCN is entitled to summary judgment on them.

Turning to MCN's second point, regardless of whether Z-Modular is relying on quantum meruit as a theory of liability or an alternative theory of relief, the theory still falters because Z-Modular can forecast no evidence establishing the reasonable value of its services.  MCN Mot. (ECF 33-1) at 32–35.  To prevail on a quantum meruit claim (or to recover using a quantum meruit remedy), Z-Modular must provide proof of the reasonable value of its services.  *Id.* at 33–34.  That means it must provide some objective proof of the market value of the goods or services at issue.

*Id.* But Z-Modular's only proof is its own unique costs and expenses, which say nothing about market value and, indeed, are a poor measure of objective value. *Id.* at 33–35.

Z-Modular responds that MCN provides "no basis" for concluding that Z-Modular's costs "are inconsistent with what another contractor would have charged." Z-Modular Opp. (ECF 35) at 21. Z-Modular misunderstands the burden. Namely, it would not be MCN's burden at trial to prove that Z-Modular's costs and expenses are ***not*** the reasonable value of the services provided. It would be Z-Modular's burden to prove—based on an objective analysis of the market value of its services—that its costs and expenses ***are*** in line with the objectively reasonable value of the work it performed and provided. Yet Z-Modular has failed to identify a single fact sufficient to prove at trial that its unique costs and expenses equate to the reasonable value of the services at issue. *See Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) ("[S]ummary judgment is appropriate if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (cleaned up).

Relatedly, Z-Modular also argues that the reasonable value of its services is an issue of fact. Z-Modular Opp. (ECF 35) at 21. That is true. But this case is no longer in the pleading stage, and Z-Modular's problem is that it has not identified any facts that would tend to show that its unique and individualized costs and expenses equate to the reasonable value of any services it performed and delivered. Z-Modular, therefore, cannot forecast evidence establishing the elements of quantum meruit—whether styled as a claim or a remedy. Summary judgment should be granted in MCN's favor on Z-Modular's quantum meruit claims (Counts III and IV).

**<u>CONCLUSION</u>**

Accordingly, the Court should grant summary judgment in MCN's favor on all claims.

      This the 22nd day of May 2023.

/s/ James Lynn Werner
James Lynn Werner (DC Bar No.: SC0005)
PARKER POE ADAMS & BERNSTEIN LLP
1221 Main Street, Suite 1100
Columbia, South Carolina 29201
Telephone: (803) 253-8913
Facsimile: (803) 255-8017
Email:  jimwerner@parkerpoe.com

Michael A. Goldsticker (D.C. Bar No. 1023452)
Stephen V. Carey (D.C. Bar No. 1004114)
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
Phone: (919) 835-4624
Email: michaelgoldsticker@parkerpoe.com
         stevecarey@parkerpoe.com

*Attorneys for Defendants MCN Build, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT was served via the Court's ECF filing system by electronic mail upon:

> Evan M. Mannering (DC Bar No. 975452)
> BAKER & HOSTETLER LLP
> 1050 Connecticut Avenue, N.W.
> Suite 1100
> Washington, DC 20036
> emannering@bakerlaw.com
> Phone: (202) 861-1500
> Fax:    (202) 861-1783
>
> Laurin D. Quiat (*admitted pro hac vice*)
> BAKER & HOSTETLER LLP
> 1801 California Street
> Suite 4400
> Denver, CO 80202
> lquiat@bakerlaw.com
> Phone: (303) 764-4136
> Fax:    (303) 861-7805
>
> *Attorneys for Z-Modular, LLC*

This the 22nd day of May 2023.

/s/ James Lynn Werner
James Lynn Werner (DC Bar No.: SC0005)